IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| ANTHONY NICHOLAS, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. CIV-24-813-PRW |
| ) | |
| PROGRESSIVE DIRECT INSURANCE ) | |
| COMPANY, ) | |
| ) | |
| Defendant. ) | |

**ORDER**

Before the Court is Defendant's Motion for Summary Judgment (Dkt. 29). This matter has been fully briefed and is ripe for decision. For the reasons that follow, Defendant's Motion (Dkt. 29) is **DENIED**.

*Background*

This action arises from an insurance claim related to a vehicle fire that occurred on May 31, 2024, in Arkansas while Plaintiff was driving from Tennessee to Oklahoma.[1] Plaintiff submitted a claim to Defendant that same day.[2] Plaintiff alleges that Defendant failed to handle the claim in good faith and improperly subjected him to a fraud investigation. After this action was filed, Defendant paid for repairs to Plaintiff's vehicle in an amount exceeding the preliminary estimate referenced in Plaintiff's Complaint.[3]

---

[1] Mot. (Dkt. 29), ¶1.

[2] *Id.* ¶13.

[3] *Id.* at 10.

It is undisputed that, after Plaintiff submitted his claim, Defendant's agent conducted Accurint and Google searches on Plaintiff and his spouse and reviewed Plaintiff's social media accounts.[4] On June 3, 2024, Plaintiff consented to a credit check, and on June 7, 2024, Plaintiff's spouse did the same.[5] Defendant contends that these credit checks revealed missed vehicle payments and that Plaintiff had shopped for a new vehicle before the fire occurred.[6] Defendant also requested that Plaintiff and his spouse provide bank statements and phone records for the three months preceding the fire[7] and participate in recorded telephone interviews with Defendant's agent.[8] Recorded calls were conducted with Plaintiff, his spouse, and Plaintiff's father.[9]

Defendant first inspected the vehicle on June 10, 2024, and prepared an initial repair estimate.[10] A second inspection occurred on July 12, 2024,[11] and Defendant authorized repairs on August 2, 2024.[12] On September 4, 2024, a repair technician reported discovering a clamp on the brake line bearing smoke marks, which the technician concluded likely caused the fire.[13] The technician stated that the clamp was not native to

---

[4] *Id.* ¶15.

[5] *Id.* ¶19.

[6] *Id.* ¶21.

[7] *Id.* ¶24.

[8] *Id.* at 14.

[9] *Id.*

[10] *Id.* ¶31.

[11] *Id.* ¶33.

[12] *Id.* ¶34.

[13] *Id.* ¶36.

the vehicle and that, because it bore smoke marks, it was unlikely to have been placed on the vehicle after the fire.[14] The technician further opined that the clamp was likely left in place by a person who had previously performed brake work on the vehicle.[15]

Defendant now moves for summary judgment.

### *Legal Standard*

Rule 56(a) of the Federal Rules of Civil Procedure requires "[t]he court [to] grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." In considering a motion for summary judgment, a court must view all facts and reasonable inferences in the light most favorable to the nonmovant.[16] Courts are not to weigh the evidence and determine the truth of the matter asserted, but instead are to determine only whether there is a genuine dispute for trial before the fact-finder.[17] A fact is "material" if, under the substantive law, it is essential to the proper disposition of the claim.[18] A dispute is "genuine" if there is sufficient evidence on each side so that a rational trier of fact could resolve the issue for either party.[19]

When, as here, the nonmoving party has the ultimate burden of persuasion at trial, the moving party "has both the initial burden of production on a motion for summary

---

[14] *Id.*

[15] Mitchell Journal Entry (Dkt. 29, Ex. 21), at 2.

[16] *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 670 (10th Cir. 1998) (citations omitted).

[17] *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986).

[18] *Id.* at 248.

[19] *Id.*

judgment and the burden of establishing that summary judgment is appropriate as a matter of law."[20] "The moving party may carry its initial burden either by producing affirmative evidence negating an essential element of the nonmoving party's claim, or by showing that the nonmoving party does not have enough evidence to carry its burden of persuasion at trial."[21] "Once the moving party points out the absence of evidence to create a 'genuine issue' of a 'material fact' on which the non-moving party bears the burden of proof at trial, . . . [t]he non-moving party must set forth specific facts showing there is a genuine issue for trial."[22]

*Analysis*

I. **Defendant is not entitled to summary judgment for breach of contract.**

As this Court found in its Order denying Plaintiff's Motion for Partial Summary Judgment, though Plaintiff has acknowledged that Defendant has paid the claim, there is still a possibility for Plaintiff to recover fees and costs in filing this claim.[23] Accordingly, the Court denies Defendant's Motion as to the claim for breach of contract.

II. **Legitimate questions of fact still exist as to Defendant's handling of the claim.**

> In order to prove a claim of breach of an insurer's duty of dealing fairly and in good faith, a plaintiff must prove the following elements: 1) the insurer was required under the insurance policy to pay the insured's claim; 2) the

---

[20] *Trainor v. Apollo Metal Specialties, Inc.*, 318 F.3d 976, 979 (10th Cir. 2002*), as amended on denial of reh'g* (Jan. 23, 2003) (citing *Nissan Fire & Marine Ins. Co. v. Fritz Cos.*, 210 F.3d 1099, 1102 (9th Cir. 2000)).

[21] *Id.*

[22] *Otis v. Canadian Valley-Reeves Meat Co.*, 884 F. Supp. 446, 449–50 (W.D. Okla. 1994), *aff'd*, 52 F.3d 338 (10th Cir. 1995) (citing *Anderson*, 477 U.S. at 248).

[23] Order Denying Motion (Dkt. 49), at 3.

4

insurer's refusal to pay the claim in full was unreasonable under the circumstances because *either*: a) it had no reasonable basis for the refusal, b) it did not perform a proper investigation of the claim, or c) it did not evaluate the results of the investigation properly; 3) the insurer did not deal fairly and in good faith with the insured; and 4) the insurer's violation of its duty of good faith and fair dealing was the direct cause of the injury sustained by the insured.[24]

Defendant has failed to show that, as a matter of law, its investigation of the claim was proper. "The essence of the tort of bad faith, as it is recognized in Oklahoma, is the unreasonableness of the insurer's actions."[25] Defendant is correct that Plaintiff was on notice that Progressive is not required to pay out claims resulting from criminal behavior, including arson.[26] Additionally, the policy also provided Plaintiff notice that he would need to "[c]ooperate with [Progressive] in any matter concerning a claim or lawsuit" and "[p]rovide any written proof of loss [Progressive] may reasonably require[.]"[27] It is unlikely that a reasonable jury would find that Defendant's actions in requesting financial records, the vehicle fire report and maintenance records, and recorded statements from Plaintiff and his spouse were either improper or unreasonable under the circumstances of a vehicle fire. However, Plaintiff also contends—and Progressive does not dispute—that Progressive also demanded phone and text records from Plaintiff and recorded statements from Plaintiff's father. Defendant has not provided, nor has the Court independently found,

---

[24] *Andres v. Oklahoma Farm Bureau Mut. Ins. Co.*, 227 P.3d 1102, 1107 (Okla. Civ. App. 2009) (emphasis added).

[25] *Conti v. Republic Underwriters Ins. Co.*, 782 P.2d 1357, 1360 (Okla. 1989).

[26] Mot. (Dkt. 29), at 10.

[27] *Id.* at 11.

any caselaw that supports the argument that such requests for phone records, which a jury could conclude exceed the scope of any necessary investigation, are reasonable as a matter of law. The Court finds that a reasonable jury could disagree with Defendant's characterization of such actions as reasonable.

Two inspections occurred on the vehicle before Progressive authorized repairs on August 2, 2024. While Defendant appears to assert that its initial hesitation to pay the claim was justified, in part, by the results of a third inspection that occurred on September 4, 2024, when the clamp on the brake line was discovered, the Court cannot hold so as a matter of law. The record does not support the implication that Plaintiff placed the clamp on the brake line himself, as the technician stated he thought it was mistakenly left after a previous repair. "[I]f there is conflicting evidence from which different inferences may be drawn regarding the reasonableness of insurer's conduct, then what is reasonable is always a question to be determined by the trier of fact by a consideration of the circumstances in each case."[28] Since an element of any bad faith claim is whether the insurer performed its investigation properly, the evidence here as to Progressive's investigation of the fire's cause is open to dueling interpretations, best resolved by a jury.

Defendant alleges that its actions were reasonable in light of the fact that Plaintiff's credit report indicated that Plaintiff missed 15 car payments throughout the life of the loan on the vehicle.[29] But the Court is unable to read too much into this information, because

---

[28] *Badillo v. Mid Century Ins. Co.*, 121 P.3d 1080, 1093 (Okla. 2005) (quoting *McCorkle v. Great Atlantic Ins. Co.*, 637 P.2d 583, 587 (Okla. 1981) (internal quotations omitted)).

[29] Nicholas Credit Report (Dkt. 29, Ex. 7), at 19.

those payments were simply late, and the credit report indicated that in June of 2024, Plaintiff did not carry a delinquent balance on the loan.[30] Taken with the multiple credit pulls by auto dealers in the days before the accident,[31] this *could* lead a jury to conclude that Progressive's actions were reasonable, but a reasonable jury could also consider that this information is discounted when thinking about the implausibility of Plaintiff choosing to set his vehicle on fire in a rainstorm in the middle of the night hundreds of miles from his home, all while his dog traveled with him. Ordinarily, "[t]he insurer does not breach the duty of good faith by refusing to pay a claim or by litigating a dispute with its insured if there is a 'legitimate dispute' as to coverage or amount of the claim, and the insurer's position is 'reasonable and legitimate.'"[32] It is for a jury to decide, in this instance, whether Defendant's actions were reasonable in light of the evidence.

### III.    It would be inappropriate to take punitive damages off the table at this stage.

Plaintiff contends that Progressive acted recklessly or intentionally in causing harm to Plaintiff. Given the record developed so far, it seems unlikely that a punitive damages question would be sent to the jury, but that is a question better reserved for trial, when the Court can make such a determination with the help of a full record.[33]

---

[30] *Id.*

[31] *Id.* at 20.

[32] *Thompson v. Shelter Mut. Ins.,* 875 F.2d 1460, 1462 (10th Cir.1989) (citing *Manis v. Hartford Fire Ins. Co.,* 681 P.2d 760, 762 (Okla.1984)).

[33] *Anders v. Walmart Inc.*, Case No. CIV-21-159-F, 2021 WL 6135568, at *2 (W.D. Okla. Dec. 29, 2021).

*Conclusion*

For the reasons given, Defendant's Motion (Dkt. 29) is **DENIED**.

**IT IS SO ORDERED** this 29th day of January 2026.

_____
PATRICK R. WYRICK
UNITED STATES DISTRICT JUDGE